

FILED
APR 16 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **DE-CHU CHRISTOPHER TANG,** | § | CIVIL ACTION NO. |
| | § | 4:20-CV-00063-ALM-CAN |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| **ALTIMMUNE, INC. and VIPIN K.** | § | |
| **GARG and DAVID J. DRUTZ,** | § | |
| | § | |
| **Defendants.** | § | JURY DEMAND |
| | § | ENDORSED HEREON |

## AMENDED COMPLAINT

Plaintiff, De-chu Christopher Tang, is making the following allegations against Defendants Altimmune, Inc., Vipin K. Garg, and David J. Drutz:

I. JURISDICTION AND VENUE

1. Pursuant to Judge Christine A. Nowak's Order (Document #: 29-1; Date Filed: 26 March 2020), Plaintiff is repleading to comply with the Federal Rules of Civil Procedure and the Court's Local Rules by submitting this Amended Complaint to the United States District Court for the Eastern District of Texas Sherman Division.

II. PARTIES

2. Plaintiff De-chu Christopher Tang (hereinafter "Plaintiff") was the Founder of Vaxin Inc. (currently known as Altimmune, Inc.).

3. Plaintiff has been a resident of Texas since 2015.

4. Defendants are Altimmune, Inc. (hereinafter "Defendants" or "Altimmune") which is a corporation doing business in Maryland (www.altimmune.com), Altimmune's current Chief Executive Officer (CEO) Vipin K. Garg (hereinafter "Defendants" or "Garg"), and David J. Drutz (hereinafter "Defendants" or "Drutz") who is currently a Board member at Altimmune and was the Chairman of the Altimmune Board prior to July 2018.

III. FACTS

5. Plaintiff was an Assistant/Associate Professor at University of Alabama at Birmingham (hereinafter "UAB") during 1994-2004. Plaintiff founded Vaxin Inc. (hereinafter "Vaxin") on UAB campus in 1997; Vaxin moved out of UAB campus in 2004; a subset of Vaxin Board members defenestrated Plaintiff out of Vaxin without any consent made during a legitimate Board meeting by changing all of the door locks against Plaintiff's will in 2012; Vaxin was relocated from Alabama to Maryland in 2012; Vaxin's nameplate was changed to Altimmune, Inc. in 2015; Altimmune became a public company (Nasdaq: ALT) in 2017.

6. Plaintiff's inventions during his tenure as the Chief Scientific Officer (CSO) at Vaxin include: i) skin-patch vaccines that allow noninvasive vaccination following topical application of a patch with neither pain nor fear (*Nature* 388: 729, 1997; *Vaccine* 23: 1029, 2005; *Infect. Immun.* 74: 3607, 2006); ii) *in ovo* vectored vaccines that allow mass-immunization of chickens by robotic injection of vectored vaccines into embryonated chicken eggs (*Vaccine* 25: 2886, 2007); iii) AdHigh system that allows rapid generation of nonreplicating recombinant adenovirus vectors without contamination with replication-competent adenovirus (*Expert Rev. Vaccines* 8: 469, 2009); and iv) drug-vaccine duo that allows nearly-immediate protection of a host

against pathogens post-immunization in a variety of disease settings (*PLoS ONE* 6: e22605, 2011; *PCT* WO 2012/129295). Plaintiff's inventions have generated deep and broad trends that may endure to benefit the society in the years to come (Google search of Plaintiff's name). Altimmune could have emerged as a major technological powerhouse if one or more of Plaintiff's inventions should have been adequately developed.

7. Unfortunately, the key Vaxin/Altimmune administrators failed to comprehend the significance of Plaintiff's inventions. Ownership of the AdHigh system was returned to Plaintiff and other Inventors during 2009 because Vaxin was not interested in AdHigh (EXHIBIT 1); Plaintiff was forced to file a provisional patent application using personal money during 2011 because Vaxin refused supporting any patent application pertaining to the drug-vaccine-duo platform for protecting its intellectual property (IP) rights at that time (EXHIBIT 1); Vaxin's then-CEO William J. Enright (hereinafter "Enright") belittled Plaintiff's inventions on many occasions.

8. It would be legitimate for Defendants and Plaintiff to part ways in order for each party to focus on the projects that they deem important. Unfortunately, Vaxin, Enright, and Drutz robbed all of Plaintiff's projects, resources, and laboratory records by changing all of the office/laboratory door locks in conjunction with defenestration of Plaintiff out of Vaxin in 2012. It was allegedly illegal and quintessentially despicable to concoct a hokey scheme by brainwashing Plaintiff on how "worthless" his inventions were followed by subsequent robbery of those "worthless" inventions away from Plaintiff with brutal force.

9. Defendants have failed to parlay Plaintiff's roots after defenestrating Plaintiff. Records show that Defendants are incompetent in bringing Plaintiff's inventions across the finish line, and a lot of Plaintiff's worthy data have been left to rot in Defendants' hands. Notably, Plaintiff's invention on the drug-vaccine duo capable of rapidly arresting mucosal pathogens in a wide variety of disease settings (*PLoS ONE* 6: e22605, 2011; *PCT* WO 2012/129295) is endowed with the potential to mitigate the COVID-19 pandemic that is currently ravaging nearly the entire world. Thus Defendants' despicable action during their assassination of Plaintiff's inventions has transformed Defendants into a Public Enemy.

10. Plaintiff filed a lawsuit against Vaxin and Enright on a variety of allegations in 2013; the lawsuit (Case No. 2:13-CV-0401-SLB) was settled in 2016 after Vaxin changed its nameplate to Altimmune in 2015. The Confidential Settlement Agreement can be disclosed to the public when ordered by Court. Altimmune and Plaintiff mutually agreed that all of Plaintiff's technologies developed by consuming resources provided by Vaxin belong to Altimmune except those given up by Defendants. Notably, Plaintiff's technologies developed at UAB were not listed as properties that belong to Defendants.

11. Soon after the lawsuit (Case No. 2:13-CV-0401-SLB) was settled in 2016, Plaintiff informed Drutz (then-Chairman of the Altimmune Board) in writing during 2016 that all or the great majority of Plaintiff's UAB laboratory notebooks (1994-2004) had been robbed by Vaxin and Enright (EXHIBIT 2). Altimmune can keep Plaintiff's Vaxin laboratory notebooks, but not his UAB records which have nothing to do with Defendants. Defendants could have closed this case with decency by returning the robbed properties back to Plaintiff; however, Defendants had responded to Plaintiff's

request with silence until 2019. In addition to Defendants' illegal possession of Plaintiff's UAB laboratory records, Drutz's nonchalant email dated 22 September 2016 in conjunction with his silent response to Plaintiff's questions (EXHIBIT 2) speak volumes that: i) Drutz supports Altimmune's predator policy as the mastermind, an instigator, or minimally a prime enabler; ii) Drutz nurtures and/or tolerates plagiarism; iii) Drutz does not care about Altimmune's success and has seriously violated his fiduciary duty as a board member; iv) Drutz has been shrewdly hurting Plaintiff's career in silence without leaving any fingerprints until he sent the nonchalant email in 2016 (EXHIBIT 2).

12. In 2019, Defendants' counsel Matthew A. Chivvis wrote to Plaintiff claiming categorically that all of Plaintiff's UAB laboratory notebooks also belong to Altimmune (EXHIBIT 3). Notably, Garg made this wrongful claim through counsel with neither rationale nor supporting evidence. Garg's absurd claim to own Plaintiff's UAB laboratory records on 10 May 2019 (EXHIBIT 3) thus changed the issue from an alleged procrastination to a blatant robbery which seriously breached the 2016 Settlement Agreement and flouted the law.

13. Plaintiff's laboratory records contain a lot of worthy findings and provide inspiration on how to develop beneficial technologies forward; therefore, Defendants' alleged robbery of Plaintiff's laboratory records has impeded Plaintiff's ability to develop beneficial technologies. Defendants' alleged thievery has thus purposely, continuously and systematically hurt Plaintiff's career, the company VaxDome Inc. (hereinafter "VaxDome") founded by Plaintiff in Texas during 2019, as well as University of North Texas Health Science Center (hereinafter "UNTHSC") which has been investing in VaxDome since 2019 (UNTHSC Acceleration Lab Program Participation Agreement

and The University of North Texas Health Science Center at Fort Worth Facility Use Agreement; 2019-2029). Since "Defendants who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions" *Id.* [quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,475 (1985) (internal quotations omitted)], Defendants' malicious intention and despicable action to purposely, continuously and systematically hurt Plaintiff who is a resident in Texas as well as VaxDome and UNTHSC which are institutions in Texas have provided the basis for this Court to exercise personal jurisdiction over non-resident Defendants.

14. Defendants allegedly committed plagiarism by repeating Plaintiff's work followed by publication of the work without listing Plaintiff as the author (Krishnan V *et al. Clin. Vaccine Immunol.* 22: 430, 2015). Although Defendants superficially denied plagiarism (EXHIBIT 3), plagiarism cannot be denied. Plaintiff's original idea to start research on this topic, his original idea to construct the vector (used by Defendants), his original idea in experimental design, his grants in support of the work (EXHIBIT 4), and his generation of the original set of data which was subsequently confirmed by Defendants (Krishnan V *et al. Clin. Vaccine Immunol.* 22: 430, 2015) can be proven in an irrefutable manner. There are multiple original expressions to prove Defendants' plagiarism. Cases in point: Battelle's Report BBRC Study No. 713-G005625 in 2008; Grant application in response to BAA-BARDA-09-34 in 2011; etc. When Defendants' allegedly plagiarized publication (Krishnan V *et al. Clin. Vaccine Immunol.* 22: 430, 2015) is compared to those older documents generated by Plaintiff and his associates, it is clear that Defendants made a copy of Plaintiff's work to a great extent and

confirmed Plaintiff's results. All Defendants did was confirmation; they are not entitled to appear as authentic authors who invented the technology out of the blue. Even though the patents associated with the work belong to Altimmune, Defendants are allegedly cheating and hurting Plaintiff, the scientific community, the investment community, the government funding agency, as well as the public by pretending to be the authentic author in publishing the work whereas in fact all Defendants did was confirmation of Plaintiff's data. Plagiarism is not only a universal crime, but also it may mislead investors into making wrong investment decisions by supporting personnel who are indecent and ostensibly qualified. Overall, investment is an act of faith, built on trust that investors have been given the facts about a business model. Defendants' plagiarism, if not corrected, will profoundly erode the culture of investment and negatively impact the health of industry.

15. The AdHigh system is owned by Plaintiff and his associates, not by Defendants (EXHIBIT 1). Although Plaintiff requested Defendants to destroy Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh at Altimmune before 31 December 2019 (EXHIBIT 3), Defendants have responded to Plaintiff's request with silence.

16. Defendants have raised $34.4 million in cash, cash equivalents, and restricted cash by 31 December 2018, from a follow-on public offering and multiple registered direct offerings (EXHIBIT 5). Defendants' alleged pump-and-dump scheme to manipulate the ALT stock on Nasdaq, including a 30:1 reverse split followed by multiple direct offerings benefited Altimmune's current administrators by pumping a large sum of cash into Defendants' accounts. However, this allegedly illegal scheme unfairly hurt Altimmune's

shareholders including Plaintiff and other investors in Texas by trampling the Nasdaq ALT share price to a downward spiral (approximately 100-fold deflation within two years since inception in 2017).

17. Although Plaintiff's data pertaining to his work on protection of macaques against inhalation anthrax with an adenovirus-vectored nasal anthrax vaccine belong to Altimmune, Defendants are responsible for advancing the work to benefit Altimmune as well as the public. As shown in EXHIBIT 3, the Altimmune Board is violating its fiduciary duty by disallowing Plaintiff's data for publication. Please note that the macaque anthrax study was supported by government grants won by Plaintiff (EXHIBIT 4). The current Altimmune management team made no contribution to it; they thus have no rights to rob it away from the Inventor and subsequently bury it alive without publication. Defendants are not only hurting all of Altimmune's shareholders and stakeholders as well as the public's rights, but also counterproductively arresting the advancement of science. In addition, assassination of Plaintiff's data is a foolish waste of government grant money, which is taxpayer money. Defendants thus represent the absolute opposite of greatness: robbing values; defenestrating the Inventor; and leaving the data to rot. Overall, Plaintiff deems it a fraud to allow "bean counters" to reap or assassinate scientific data that are not generated by them.

## IV. FIRST CAUSE OF ACTION
### BREACH OF SETTLEMENT AGREEMENT BY ROBBING PLAINTIFF'S PROPERTIES POST-SETTLEMENT

18. Although Defendants' crime in robbing Plaintiff's properties during 2012-2016 was settled in 2016, Defendants' ongoing robbery of Plaintiff's properties post-settlement

represents a recurring crime that must be arrested. Defendants' alleged thievery has purposely, continuously and systematically hurt Plaintiff in conjunction with UNTHSC in Texas, the global scientific community, as well as the public nationwide by preventing Plaintiff from developing innovative technologies that will benefit the society. As detailed above, Defendants are bound to return Plaintiff's UAB laboratory notebooks which do not belong to Altimmune. In writing, Defendants have illegally refused doing so by wrongfully claiming that all of Plaintiff's UAB laboratory notebooks also belong to Altimmune with neither rationale nor supporting evidence (EXHIBIT 3). Defendants' blatant robbery of Plaintiff's properties is not only a serious breach of Settlement Agreement but also a shameless display of corporate kleptocracy; Defendants' crime is not venial and not mortal until robbed properties are returned to their victims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. That the Court declare the rights and duties of the parties consistent with the relief sought by Plaintiff;

b. That Defendants return all of Plaintiff's UAB laboratory notebooks back to Plaintiff within 30 days after it is ordered by Court;

c. That Defendants pay Plaintiff a civil penalty in the amount of $100,000 within 30 days after returning all of the UAB laboratory notebooks back to Plaintiff;

d. That Defendants pay Plaintiff a compensation in the amount of $4,000,000 within 30 days after it is ordered by Court if Defendants are unable to return the UAB laboratory

notebooks back to Plaintiff. Plaintiff's UAB laboratory notebooks are worth $4,841,600, as justified by awards and grants won by Plaintiff as a faculty member at UAB during 1994-2004 (EXHIBIT 4);

e. Plaintiff further prays for such additional relief as the interests of justice may require.

## V. SECOND CAUSE OF ACTION
## PLAGIARISM

19. Defendants' plagiarism not only hurt Plaintiff's career, but also may mislead investors into making wrong investment decisions by supporting personnel who are indecent and ostensibly qualified; it is also a serious offense to justice. Since Defendants are still trying to cover it up (EXHIBIT 3), this misdemeanor must be corrected by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. That Defendants retract the paper "Krishnan V *et al. Clin. Vaccine Immunol.* 22: 430, 2015" by admitting plagiarism to the Journal Editor at *Clin. Vaccine Immunol.*;

b. Plaintiff further prays for such additional relief as the interests of justice may require.

## VI. THIRD CAUSE OF ACTION
## ADHIGH SYSTEM

20. Plaintiff and his associates developed the proprietary AdHigh system, which is owned by the Inventors, not Altimmune (EXHIBIT 1). Thus Defendants are not allowed to commercialize Plaintiff's AdHigh system without Plaintiff's approval. Plaintiff requested Defendants to destroy Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh at Altimmune prior to 31 December 2019 (EXHIBIT 3); however, Defendants have responded to Plaintiff's request with silence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. That Defendants declare a moratorium to use Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh;

b. That Defendants declare that Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh will be destroyed at Altimmune;

c. That Defendants declare that Plaintiff's AdHigh system and any vector generated using Plaintiff's AdHigh will not be utilized for any commercial purpose without Plaintiff's approval;

d. Plaintiff further prays for such additional relief as the interests of justice may require.

## VII. FOURTH CAUSE OF ACTION
**ALLEGED MANIPULATION OF THE ALT STOCK**

21. As the Founder of Vaxin, Plaintiff created the core value chain which is still one of the bedrocks in support of Altimmune's business model (www.altimmune.com). However, Defendants preyed upon Plaintiff by engineering a fraudulent scheme that pocketed Defendants with tens of millions of dollars in cash (EXHIBIT 5) as described above. Notably, the ALT stock was sold at a price of approximately $8 per share on Nasdaq at inception during 2017; thus Plaintiff's 220,000 shares were worth approximately $1.8 million in 2017. However, Defendants allegedly concocted a pump-and-dump scheme for transferring a large sum of cash into Defendants' accounts from the stock market (EXHIBIT 5). The share price of the ALT stock has thus been deflated approximately 100-fold within two years with a precipitous decline each time when a direct offering occurred. Plaintiff's creativity and values generated through hard work over the years were thus cleverly and quietly robbed away by Defendants. While

current Altimmune administrators who made nil contribution to Plaintiff's groundbreaking work amassed a large sum of cash, Plaintiff's shares became virtually worthless. If the law does not intervene to reverse Altimmune's course which is driven by a disastrous combination of predator policy, shortsighted decisions and bureaucratic malfeasance, Altimmune conceivably will be a catastrophe-in-waiting if Defendants are allowed to reward superficiality and punish substance. The continuous deflation of the ALT stock to the brink of nothingness on Nasdaq in conjunction with self-aggrandizement that has pumped a large sum of cash from the stock market into Defendants' accounts (EXHIBIT 5) are collectively raising a red flag alleging that Altimmune may be in contravention of the U.S. Securities and Exchange Commission (SEC) rules toward jeopardization of social order.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. That Defendants pay Plaintiff $1,000,000 to reward Plaintiff for his groundbreaking contribution as the Founder as well as compensate the damages inflicted upon Plaintiff owing to Defendants' mismanagement;

b. Plaintiff further prays for such additional relief as the interests of justice may require.

**VIII. FIFTH CAUSE OF ACTION**
**WASTING GOVERNMENT GRANT MONEY AND POISONING SCIENCE BY LEAVING DATA TO ROT**

22. Altimmune has lost its raison d'être by robbing values; defenestrating the Inventor; and leaving important data to rot (EXHIBIT 3). For the sake of science and society, the law ought to intervene by sending values where they deserve to go, where they can create a higher impact.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against Defendants as follows:

a. That the Court allow Plaintiff to publish his macaque study (EXHIBIT 3), and continue advancing the work with construction over destruction, engagement over estrangement;

b. Plaintiff further prays for such additional relief as the interests of justice may require.


Plaintiff demands a trial by jury of all triable issues.

A copy of this Amended Complaint is mailed to the following address by Plaintiff:

**Christine A. Nowak**
**United States Magistrate Judge**
**U.S. District Court for the Eastern District of Texas**
**Sherman Division**
**101 E. Pecan Street, Suite 112**
**Sherman, TX 75090**

**Respectfully submitted,** this 16th day of April, 2020.

_____
**DE-CHU CHRISTOPHER TANG**
**FOUNDER; VAXIN INC. (currently known as ALTIMMUNE, INC.)**

**6713 Shady Bend Lane**
**Plano, TX 75024**

Phone: (205) 612-0337
Email: dechutang@gmail.com

**PLAINTIFF REPRESENTING HIMSELF**


**Defendants' Address**
**VIPIN K. GARG**
**DAVID J. DRUTZ**
**ALTIMMUNE, INC.**
**910 Clopper Road, Suite 201-S**
**Gaithersburg, MD 20878**

## **CERTIFICATE OF SERVICE**

This is to certify that within one day after Plaintiff receives the Summons signed by a Court Clerk, the undersigned will serve the foregoing as follows:

A copy of this Amended Complaint and a copy of the Summons that properly names the party on whom the Summons and Complaint are served will be delivered to each the following addresses via U.S. Mail:

**Aric L. Stock**
**Counsel for Altimmune, Inc.**
**8350 N. Central Expwy**
**Ste 1225**
**Dallas, TX 75206**
**Phone: (972) 458-5353**

**Vipin K. Garg**
**Altimmune, Inc.**
**910 Clopper Road, Suite 201-S**
**Gaithersburg, MD 20878**
**Phone: (240) 654-1450**

**David J. Drutz**
**Pacific Biopharma Associates LLC**
**1059-A**
**Canterbury Lane**
**Chapel Hill, NC 27517**
**Phone: (919) 942-4547**

By: _____

**DE-CHU CHRISTOPHER TANG**

**PLAINTIFF REPRESENTING HIMSELF**